JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Don Wade, Sr. and Felicia Wade, h/w

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marc A. Weinberg, Esq. (SAFFREN & WEINBERG)
815 Greenwood Ave., Suite 22
Jenkintown, PA 19046   (215) 576-0100

## DEFENDANTS

USAA Insurance Company

County of Residence of First Listed Defendant   Bexar, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Bryan M. Shay, Esq. (POST & SCHELL, P.C.)
Four Penn Center, 13th Fl.   1600 John F. Kennedy Blvd.
Philadelphia, PA 19103   (215) 587-1182

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1332
Brief description of cause:
Insurance contract and insurance bad faith action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
➤75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   06/21/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2713 N. 46th St., Philadelphia, PA 19131 _____

Address of Defendant: _____ 9800 Fredericksburg Road, San Antonio, TX 78288 _____

Place of Accident, Incident or Transaction: _____ 2713 N. 46th St., Philadelphia, PA 19131 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/21/2019 _____   205953 _____

*Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
        *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☑ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Bryan M. Shay, Esq.** , counsel of record *or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 06/21/2019 _____   205953 _____

*Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DON WADE, SR., and FELICIA WADE, h/w     ) | |
| ) | |
| **Plaintiffs**     ) | **CIVIL ACTION** |
| ) | |
| **v.**     ) | **NO.** |
| ) | |
| USAA INSURANCE COMPANY,     ) | |
| ) | |
| **Defendant**     ) | |

### CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)          (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

| | | |
|---|---|---|
| ___6/21/2019___ | _Bryan M. Shay, Attorney-at-law_ | _Defendant_ |
| **Date** | Bryan M. Shay, Attorney-at-law | **Attorney for** |
| ___(215) 587-1182___ | ___(215) 587-1444___ | bshay@postschell.com |
| **Telephone** | **FAX Number** | **E-mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DON WADE, SR., and FELICIA WADE, h/w ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **NO.** |
| USAA INSURANCE COMPANY, ) | |
| ) | |
| **Defendant** ) | |

### NOTICE OF REMOVAL

Defendant USAA General Indemnity Company, improperly named in Plaintiff's Complaint as "USAA Insurance Company" ("USAA GIC"),[1] by and through its undersigned counsel, hereby removes the above-captioned action pursuant to 28 U.S.C. § 1441, *et seq*. In support thereof, USAA GIC avers as follows:

### The Parties and Background

1.      This action alleging claims for breach of insurance contract and statutory insurance bad faith arises from a dispute between plaintiffs Don Wade, Sr. and Felicia Wade, and USAA GIC regarding Plaintiffs' claim for insurance coverage in connection with alleged wind damage that occurred to their home on or about October 8, 2018. Plaintiffs seek coverage for this alleged property damage under a policy of homeowners' insurance issued to Plaintiffs by USAA GIC (the "Policy").

2.      A copy of Plaintiffs' Complaint (to which a copy of the Policy is attached) is attached hereto as Exhibit "1."

---

[1] As the relevant insurance policy was issued to Plaintiffs by USAA GIC, it is USAA GIC that is the proper defendant in this matter. The undersigned counsel will consult with counsel for Plaintiffs in order to obtain a correction of the caption via a stipulation of the parties.

3.     Plaintiffs' Complaint was filed with the Court of Common Pleas of Philadelphia County on or about May 20, 2019.  *See id.*

4.     Plaintiffs' Complaint was served on USAA GIC via certified United States mail on or about May 23, 2019.  *See* Exhibit "2."

5.     Plaintiffs Don and Felicia Wade are individuals who reside at the property at issue, which is located at 2713 N. 46th Street, Philadelphia, PA 19131.  *See* Ex. 1 at ¶ 1.

6.     USAA GIC is a corporation organized and existing under the laws of the state of Texas, and it has its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

7.     In their Complaint, Plaintiffs allege that USAA GIC provided homeowners insurance under the Policy for the home located at 2713 N. 46th Street, Philadelphia, PA 19131, and that Plaintiffs and their home were insured under the Policy at the time of the incident relevant to this lawsuit.  *See id.* at ¶ 3; *see also id.* at Exhibit A.

8.     As set forth in the Policy that is attached to Plaintiffs' Complaint, the Policy limits for the dwelling coverage under the Policy were $313,000, and the Policy limits for the personal property coverage were $234,750.  *See id.* at Exhibit A.

9.     Plaintiffs allege that on October 8, 2018, Plaintiffs' dwelling and personal property sustained property damage caused by wind and rain; the alleged damage included damage to the walls, floors, and ceiling of the dwelling.  *See id.* at ¶¶ 3-6, 9.

10.     Plaintiffs allege that they provided timely notice of the purported property damage to USAA GIC, and that they properly sought coverage under the Policy for said damage.  *Id.* at ¶ 8.

11.     Plaintiffs further allege that USAA GIC has not paid the benefits owed to Plaintiffs under the Policy including, but not limited to, benefits for damages to Plaintiffs' dwelling and personal property. *Id.* at ¶¶ 8-9

12.     In Count I of the Complaint, which is entitled "Breach of Contract," Plaintiffs allege that USAA GIC breached the Policy by failing to provide the full Policy benefits to which Plaintiffs claim they are entitled. *See id.* at ¶¶ 12-13, 15.

13.     In Count I, Plaintiffs seek damages that include the contractual benefits owed under the Policy, interest, and attorneys' fees. *See id.* at Count I, *ad damnum* clause.

14.     In Count II of the Complaint, which is entitled "§ 8371 Bad Faith and Common Law Bad Faith," Plaintiffs contend that USAA GIC violated Pennsylvania's insurance bad faith statute, 42 Pa. C.S. § 8371, by allegedly declining to provide coverage for the damage to Plaintiffs' dwelling; and in its handling of Plaintiffs' property damage claim. *See id.* at ¶¶ 18-23.

15.     In Count II, Plaintiffs seek "extra contractual damages," interest, and attorneys' fees. *See id.* at Count II, *ad damnum* clause.

16.     USAA GIC now timely removes the instant matter to this Court.

## Basis for Removal to Federal Court

17.     A defendant may remove a civil action that was filed in a state court to the federal court for the district in which the state court action is pending, provided the federal court would have original jurisdiction to address the matter. *See* 28 U.S.C. §§ 1441(a); 1446(a).

18.     The burden of demonstrating federal court jurisdiction under 28 U.S.C. § 1332 is on the party invoking that jurisdiction, *see Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007), and the defendant's right to remove is to be determined according to the plaintiff's

pleading at the time of the petition for removal. *See Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217 (3d Cir. 1999).

19.    As set forth herein, this Court's original jurisdiction over the instant matter is based upon diversity of citizenship under 28 U.S.C. § 1332, insofar as all parties are of diverse citizenship at all times material hereto, and Plaintiff's claimed damages are in excess of $75,000, as established below.

20.    Plaintiffs are citizens of Pennsylvania. *See* Ex. 1 at ¶ 1.

21.    USAA GIC is a citizen of Texas, as it is incorporated in the state of Texas and has its principal place of business in Texas. *See* 28 U.S.C. § 1332(c)(1) (stating that a corporation shall be deemed to be a citizen of any state in which it has been incorporated, as well as the state in which it has its principal place of business).

22.    Thus, the requisite complete diversity of citizenship exists between the parties.

23.    Generally, the amount in controversy is evaluated by looking to the demand for relief in the complaint. *See, e.g., Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 398-99 (3d Cir. 2004).

24.    Where, however, the claim for damages is not specific as to the amount, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *See Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).

25.    In addition, where the plaintiff does not specifically aver in its complaint that the amount in controversy is less than the jurisdictional minimum, removal should be permitted unless it appears to a legal certainty that the plaintiff cannot recover the jurisdictional minimum.

*See Samuel-Bassett,* 357 F.3d at 397-98; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938).

26.     In their Complaint, Plaintiffs seek the coverage available under the Policy.  *See* Ex. 1 at ¶¶ 9-12.

27.     Because the Policy that is attached to Plaintiffs' Complaint indicates policy limits of $313,000 for dwelling protection and $234,750 for Personal Property/Contents Coverage, *see* Ex. 1 at Exhibit A, a "reasonable reading of the value of the rights being litigated" in Plaintiffs' Complaint demonstrates that Count I of Plaintiffs' Complaint—on its own—exceeds the jurisdictional threshold of $75,000 set forth in 28 U.S.C. § 1332.

28.     In addition, Plaintiffs' bad faith claim (Count II) alleges an entitlement to the damages available under 42 Pa. C.S. § 8371, which include attorneys' fees and punitive damages.  *See* 42 Pa. C.S. § 8371; *Hook v. Progressive Cas. Ins. Co.,* 2008 U.S. Dist. LEXIS 68985, at **7-10 (M.D. Pa. Aug, 18, 2008).

29.     Where attorneys' fees are available by operation of a statute such as § 8371, the recovery of such sums is to be included in the calculation of damages for purposes of determining the amount in controversy.  *See, e.g., Suber v. Chrysler Corp.,* 104 F.3d 578, 585 (3d Cir. 1997); *see also Morris v. Bankers Life & Cas. Co.,* 2012 U.S. Dist. LEXIS 23952, at *5 (E.D. Pa. Feb. 23, 2012) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."); *Stehle-Rosellini v. Allstate Corp.,* 2010 U.S. Dist. LEXIS 5709, at **11-12 (W.D. Pa. Jan. 25, 2010) (same).

30.     Likewise, statutorily-available punitive damages are included in the calculation of damages for purposes of determining the amount in controversy. *See, e.g., Golden v. Golden,*

382 F.3d 348, 355 (3d Cir. 2004); *see also Fine v. State Farm Fire & Cas. Co.*, 1993 U.S. Dist. LEXIS 7682, at **3-4 (E.D. Pa. June 11, 1993); *Hook*, 2008 U.S. Dist. LEXIS 68985, at **7-10.

31.     Given the availability of statutory attorneys' fees and punitive damages under § 8371, in the unlikely event that Plaintiffs were to prevail in all of their actions, it cannot be said "to a legal certainty" that Plaintiffs cannot recover the jurisdictional minimum of $75,000 in Count II alone. *See Samuel-Bassett,* 357 F.3d at 397-98; *see also Frederico*, 507 F.3d at 196-97.

32.     Thus, Count II—by itself—satisfies the amount in controversy requirement for federal jurisdiction.

33.     Furthermore, for the purpose of calculating the amount in controversy, the damages claimed in the separate breach of contract and statutory bad faith claims alleged by Plaintiffs must be aggregated, as each claim sets forth distinct legal theories and requires differing burdens of proof, while also allowing for separate recoveries of damages. *See, e.g., Brown v. Liberty Mut. Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 76139, at *8 (E.D. Pa. Oct. 19, 2006) (holding that plaintiff's demand of $50,000 each for a breach of contract and bad faith claim satisfied amount in controversy requirement); *see also Miller v. Progressive Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 32074, at **6-7 (M.D. Pa. Apr. 17, 2008) (aggregating amount demanded in breach of contract claim with damages available for bad faith); *Kidd v. Prudential Ins. Co. of Am.*, 2008 U.S. Dist. LEXIS 2934, at **6-7 (M.D. Pa. Jan. 15, 2008) (holding that plaintiff's demand of $35,000 for contract count and $50,000 for bad faith count satisfied amount in controversy requirement); *Ketz v. Progressive N. Ins. Co.*, 2007 U.S. Dist. LEXIS 43245, at **8-9 (M.D. Pa. June 14, 2007) (holding that bad faith and breach of contract are "not alternative bases for recovery and can be aggregated to calculate the amount in controversy.").

34. For all of the foregoing reasons, the instant action satisfies the amount in controversy requirement pursuant to 28 U.S.C. § 1332, as it cannot be said "to a legal certainty" that Plaintiffs cannot recover more than the $75,000 jurisdictional threshold in the unlikely event that Plaintiffs were to prevail in all of their actions.

35. The United States District Court for the Eastern District of Pennsylvania is the District Court having jurisdiction over this matter, as the instant civil matter was originally filed in the Court of Common Pleas of Philadelphia County.

36. USAA GIC has timely filed for removal of the instant matter to this Court, as it has filed this Notice of Removal within thirty (30) days of service of the Complaint on USAA GIC. 28 U.S.C. § 1446(b).

37. As required under 28 U.S.C. § 1446(d), USAA GIC has also filed copies of this Notice of Removal, and related papers, with the Prothonotary for the Court of Common Pleas of Philadelphia County, in order to effect the removal of this action.

38. Simultaneous with the filing of this Notice of Removal, USAA GIC has given written Notice of Removal to counsel for Plaintiff.

**WHEREFORE,** pursuant to 28 U.S.C. §§ 1441 and 1446, USAA GIC respectfully requests that the above-captioned matter, now pending in the Court of Common Pleas of Philadelphia County, be removed to the United States District Court for the Eastern District of Pennsylvania.

POST & SCHELL, P.C.

By:  _____

     **BRYAN M. SHAY, ESQ.**
      (PA ID No. 205953)
     **MADISON G. MELINEK, ESQ.**
      (PA ID No. 325721)
     Four Penn Center, 13th Fl.
     1600 John F Kennedy Blvd.
     Philadelphia, PA 19103
     215-587-1182  (phone)
     215-320-4876  (fax)
     bshay@postschell.com
     *Attorneys for Defendant*

**Dated:** 6/21/19

8

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing <u>Notice of Removal</u> to be served on the following counsel of record via the Court's ECF system and first-class U.S. Mail, postage pre-paid:

Marc A. Weinberg, Esq.
SAFFREN & WEINBERG
815 Greenwood Ave, Suite 22
Jenkintown, PA 19046
*Counsel for Plaintiff*

POST & SCHELL, P.C.

By: _____

BRYAN M. SHAY, ESQ.
(PA ID No. 205953)
MADISON G. MELINEK, ESQ.
(PA ID No. 325721)
Four Penn Center, 13th Fl.
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
215-587-1182  (phone)
215-320-4876  (fax)
bshay@postschell.com
*Attorneys for Defendant*

Dated: 6/21/19

# EXHIBIT
# 1

CERTIFIED MAIL

7019 0140 0000 5295 6273

**SAFFREN & WEINBERG**
Suite 22
815 Greenwood Avenue
Jenkintown, PA 19046-2800

USAA Casualty
Insurance Company
9800 Fredericksburg Boulevard
San Antonio, TX 78288

LAW OFFICES

# SAFFREN & WEINBERG

SUITE 22
815 GREENWOOD AVENUE
JENKINTOWN, PA 19046-2800

KENNETH S. SAFFREN**
MARC A. WEINBERG**
JEFFREY D. SCHAFFER**
JONATHAN H. KAPLAN**
ROBERT P. MAIZEL+

**MEMBER OF PENNSYLVANIA and NEW JERSEY BARS
+MEMBER OF PENNSYLVANIA BAR

(215) 576-0100
FAX: (215) 576-6288
FAX: (215) 576-8220
***PLEASE RESPOND TO JENKINTOWN OFFICE***

PHILADELPHIA OFFICE
Two Penn Center Plaza
1500 J.F.K. Blvd., Suite 1030
Philadelphia, PA 19102

NEW JERSEY OFFICE
Four Greentree Centre
601 Route 73 North, Suite 105
Marlton, NJ 08003
(856) 667-8888
Fax (856) 667-1107

May 20, 2019

*Via Certified Mail - Return Receipt Requested*
*No.:* 7019 0160 0000 5795 6273
USAA Casualty Insurance Company
9800 Fredericksburg Boulevard
Saint Antonio, TX 78265
Claim #: 041357076-003

Re:    **Don Wade, et al v. USAA Insurance Company**
       **CCP, Philadelphia County, May Term, 2019, No. 2023**

Dear Sir/Madam:

Enclosed please find a Civil Action Complaint which has been filed against you in the Court of Common Pleas of Philadelphia County, Pennsylvania at the above court term and number.

Kindly forward this document to your insurance company and/or legal representative so that the appropriate action may be taken. Failure to do so may result in the case proceeding without you and a judgment may be entered against you by the Court without further notice, for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.

Very truly yours,

*Kenneth S. Saffren*

KENNETH S. SAFFREN

KSS/ks
enclosure

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2019

E-Filing Number: 1905045417

002023

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| DON WADE SR. | USAA INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2713 N. 46TH STREET PHILADELPHIA PA 19131 | 9800 FREDERICKSBURG BOULEVARD SAN ANTONIO TX 78288 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| FELICIA WADE | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2713 N. 46TH STREET PHILADELPHIA PA 19131 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☒ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☐ Jury ☒ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE

10 - CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| FILED PRO PROTHY MAY 20 2019 K. KALOGRIAS | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: DON WADE SR., FELICIA WADE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MARC A. WEINBERG | 815 GREENWOOD AVENUE SUITE 22 JENKINTOWN PA 19046 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)576-0100 | (215)576-6288 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 60643 | Kramsey@saffwein.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| MARC WEINBERG | Monday, May 20, 2019, 11:52 am |

FINAL COPY (Approved by the Prothonotary Clerk)

USAA052319S990038500043

SAFFREN & WEINBERG
By: Marc A. Weinberg, Esq.
Atty. I.D. No. 60643
815 Greenwood Avenue, Suite 22
Jenkintown, PA 19046
Telephone: (215) 576-0100

**MAJOR NON-JURY**

Attorney for Plaintiffs

*Filed and Attested by the Office of Judicial Records 20 MAR ... am*

| | |
|---|---|
| DON WADE, SR. and<br>FELICIA WADE, h/w<br>2713 N. 46th Street<br>Philadelphia, PA 19131 | : COURT OF COMMON PLEAS<br>: PHILADELPHIA COUNTY<br>:<br>:<br>: |
| vs. | :<br>: NO. |
| USAA INSURANCE COMPANY<br>9800 Fredericksburg Boulevard<br>San Antonio, TX  78288 | :<br>:<br>: |

## NOTICE TO PLEAD

<table>
<tr><td>

### NOTICE

     You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**PHILADELPHIA COUNTY BAR ASSOCIATION**
     Lawyer Referral Service
     One Reading Center
     Philadelphia, PA 19103
     (215) 238-6300

</td><td>

### AVISO

     Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades o otros derechos importante para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE PARA PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

     **ASOCIACION DE LICENCIADOS DE FILADELFIA**
     Servicio De Referencia E Informacion Legal
     One Reading Center
     Philadelphia, PA 19107
     Telefono: (215) 238-6300

</td></tr>
</table>

Case ID: 190502023

SAFFREN & WEINBERG                          **MAJOR NON-JURY**
By: Marc A. Weinberg, Esq.
Atty. I.D. No. 60643
815 Greenwood Avenue, Suite 22              Attorney for Plaintiffs
Jenkintown, PA 19046
Telephone: (215) 576-0100

DON WADE, SR. and                : COURT OF COMMON PLEAS
FELICIA WADE, h/w                : PHILADELPHIA COUNTY
2713 N. 46th Street              :
Philadelphia, PA 19131           :
                                 :
            vs.                  :
                                 : NO.
USAA INSURANCE COMPANY           :
9800 Fredericksburg Boulevard    :
San Antonio, TX   78288          :

<u>**CIVIL ACTION COMPLAINT**</u>

<u>**1C - CONTRACT**</u>

1.     Plaintiffs, Don Wade, Sr. and Felicia Wade (hereinafter "Plaintiffs") by way of

Complaint against the Defendant, USAA Insurance Company, say at all times relevant hereto

Plaintiffs were individuals who owned and resided at the above referenced property.

2.     Defendant, USAA Insurance Company (hereinafter "Defendant") is a corporation

or duly authorized legal entity operating in the Commonwealth of Pennsylvania with a business

located at the above captioned address.

3.     At all times relevant hereto, Defendant's business purpose was to provide general

and casualty insurance related products and services to consumers in a position such as that of

Plaintiffs and insured the home located at 2713 N. 46th Street, Philadelphia, PA 19131

(hereinafter "property").

4.     The above referenced policy paid for by Plaintiffs was in effect with the

Defendant at all times relevant to this litigation.  See attached copy of insurance policy attached

as "Exhibit A".

5.      This general insurance policy provided coverage to buildings, structures and the premises as well as personal property or any losses which may occur at the above referenced property location.  See attached copy of insurance policy attached as "Exhibit A".

6.      Plaintiffs sustained a valid property loss on or about October 8, 2018.. Although a valid policy of insurance was in effect in the calendar year 2018, Defendant did not provide all the rights, privileges and benefits associated with said insurance policy and has failed to be compensated for the above referenced covered property loss.

7.      The above referenced policy attached hereto specifically provides coverage for property loss associated with wind, storm, rain damage, etc.

8.      Plaintiffs timely reported this loss to Defendant, who refused by and through their employees, servants, contractors and/or adjusters to pay said claim for the full value of the loss sustained on October 8, 2018 but did assign an appropriate claim number.

9.      Plaintiffs sustained a loss due to structural damage caused by wind and rain damage resulting in damage and loss to walls, floors, ceilings as well as other personal property and attributable damages.

10.     As of this date, any and all damages incurred by the Plaintiffs remain due and payable from the Defendant as Defendant has a binding obligation to compensate Plaintiffs for all related damages to the above referenced property location.

## COUNT I

## BREACH OF CONTRACT

11.     Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

Case ID: 190502023

USAA052319S990038552019

12.     After repeated demands for payment from the Defendant, Defendant continues to refuse payment of all related damages to the above referenced property location as a result of their ongoing failure to communicate and advise Plaintiffs as the status of same claim.

13.     As of said date, Defendant has continually refused to fully pay for damages associated with Plaintiffs' property as a result of the loss of October 8, 2018 and, furthermore, has refused to communicate, advise and/or correspond with Plaintiffs as to the status of any accident related claims.

14.     Defendant has accepted all valid policy premiums from the Plaintiffs so that coverage may be afforded in the event such as the loss described above and has failed to fulfill its contractual obligations associated with the payment of said claim.

15.     Defendant, by and through its employees, servants, contractors and/or adjusters, have refused to perform the following:

a)     failing to pay said property loss to the Plaintiffs on a timely basis;

b)     failing to properly adjust and evaluate said claim on a timely basis;

c)     failing to conduct a thorough and appropriate investigation as to the property loss;

d)     failed to keep Plaintiffs in proper communication with all related claims related status;

e)     failing to properly adjust said property loss so that Plaintiffs may be afforded the opportunity within which to repair said property location;

f)     failed to actively engage in the claims settlement practice by refusing to properly advise Plaintiffs as to the timely payment of said property loss;

g)     failed to properly engage in direct communication with Plaintiffs' public

adjuster on a timely basis;

h)    failing to advise Plaintiffs in writing as to the status of said claim on a consistent basis;

i)    failed to make appropriate payment for all related emergency service related expenses so that Plaintiffs may mitigate said property loss and protect said property from further damage and/or harm;

j)    failed to meet its contractual obligations to Plaintiffs' by not actively engaging in evaluating said property on a timely basis at or near the time of said loss (October 8, 2018); and

k)    failed to meet its contractual obligations to timely make payment and act in good faith associated with the examination, investigation and/or payment of said property loss.

WHEREFORE, Plaintiffs seek judgment against the Defendant for property damage coverage associated with the above referenced loss and, in addition, seeks the following:

a)    all contractual damages deemed payable directly to Plaintiffs;

b)    interest associated with those monies associated with the damages of said property;

c)    attorney's fees and costs associated with the filing of this action and the litigation of this matter; and

d)    all other relief this Honorable Court deems just and proper.

## COUNT II

## §8371 BAD FAITH AND COMMON LAW BAD FAITH

16.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein

at length.

17.     At all times relevant hereto, Defendant was given appropriate opportunity to evaluate, examine and investigate claims of damage attributable to said Plaintiffs' property location.

18.     Defendant's adjuster had a full and complete opportunity to evaluate said property for damages that occurred in Plaintiffs' property as a result of the October 8, 2018 property loss.

19.     As of this date, Plaintiffs have received minimal monies from Defendant with regard to the payment of said property claim.

20.     Furthermore, Defendant has refused to provide Plaintiffs additional coverages which would be attributable as a result of said loss including ALE coverage, other related coverage associated with said claim and has failed to properly advise Plaintiffs as to claim status more than six months subsequent to said loss.

21.     Furthermore, Defendant has refused to provide coverage pursuant to said claim and damages even though all appropriate policy premiums have been provided to Defendant.

22.     Defendant's failure to accept this claim of damages by the Plaintiffs involves that of bad faith as there is no legitimate and reasonable basis by which to deny said clear and convincing evidence of harm, evidenced on said Plaintiffs' property location.

23.     Defendant's actions constitute those compensable pursuant to the Pennsylvania Bad Faith Statute §8371 and Common Law Bad Faith in that there was no legitimate basis and/or rationale for the denial of said claim nor was there any valid basis by which to deny and/or exclude this claim from compensation.

24.     Defendant's actions include but are not limited to:

Case ID: 190502023

a)    failing to properly adjust same claim;

b)    failing to properly apprise Plaintiffs of the status of said claim when said claim was timely reported to the Defendant;

c)    failing to properly keep in direct communication with Plaintiffs' public adjuster on a timely basis;

d)    failing to evaluate Plaintiffs' property location;

e)    failing to actively engage in the claim's settlement practices by refusing to adequately adjust said claim and simply paying minimal monies associated with said property loss;

f)    failing to adequately and properly have all appropriate representatives of Defendant and potential experts evaluate said property location so that Defendant may provide Plaintiffs oral and/or written communication concerning the status of said loss;

g)    failing to properly give Plaintiffs appropriate notice of said claim status whereby Plaintiffs have been forced to address the concerns of said property without the assistance of said policy insurance payments;

h)    failing without any appropriate basis to pay said claim when all appropriate evidence of loss has been provided and afforded to Defendant;

i)    failing to properly make all necessary claim decisions with all relevant information that has been brought to them by the Plaintiffs.

WHEREFORE, Plaintiffs seek judgment against the Defendant for coverage associated with the above referenced loss and, in addition, seeks the following:

a)    extra contractual damages deemed payable to Plaintiffs;

b)    interest associated with those monies associated with the damage of said

property;

c)    attorney's fees and costs associated with the filing of this action and the

litigation of this matter; and

d)    all other relief this Honorable Court deems just and proper.


SAFFREN & WEINBERG

By: _____

Marc A. Weinberg, Esquire
Attorney for Plaintiff

Case ID: 190502023

USAA052319S99003859700438

## VERIFICATION

_Don Wade_, hereby states that he/she is the

Plaintiff in this matter and verifies that the statements made in the foregoing Civil Action

- Complaint are true and correct to the best of his/her knowledge, information and belief.

The undersigned understands that the statements herein are made subject to the penalties

of 18 Pa.C.S.A. Sec. 4904 relating to unsworn falsification to authorities.

_Don Wade_

DATE: _1/20/2019_

Case ID: 190502023

# EXHIBIT "A"

Case ID: 190502023

Case ID: 190502023

MAIL MACH-I

50871-0705

00954.3GFHL.JSS1318049344.31.01.147

DON WADE
2713 N 46TH ST
PHILADELPHIA PA 19131-1502

USAA®

9800 Fredericksburg Road
San Antonio, Texas 78288

USAA052319SS9900386990O441

USAA052319S99003860000442



**USAA**®

PAGE   1
MAIL MACH-I
59148

# HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-01-16 TO: 10-01-17

DON WADE
2713 N 46TH ST
PHILADELPHIA PA 19131-1502

GIC      04135 70 76    90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) USAA considers many factors when determining your premium. Maintaining your property to reduce the probability of loss is one of the most important steps you can take toward reducing premium increases. A history of claim activity will affect your policy premium.

2) Go to usaa.com to view policy coverages and home features.

3) Your policy does NOT cover loss due to flood from any source. For information about obtaining flood coverage from the National Flood Insurance Program (NFIP), call USAA at (800) 531-8722, or contact the NFIP directly.

   If you already have a flood policy, you should review it to make sure you have the appropriate coverage and limits. No automatic increases or adjustments are applied to your policy. Coverage for loss of household contents due to flood may be available at an additional cost. If you have questions, please call a member service representative at the phone number above.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
To receive this document and others electronically or view your policy summary online, go to usaa.com.
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1

Case ID: 190502023
49769-0406

USAA052319S99003860400443

THIS PAGE INTENTIONALLY LEFT BLANK

L03GFHL.000147.0031.0002.0.000000.Z.

USAA052319S99003860200444



PAGE 3
MAIL MACH-I

**USAA GENERAL INDEMNITY COMPANY**



9800 Fredericksburg Road – San Antonio, Texas 78288
HOMEOWNERS POLICY DECLARATIONS

Named Insured and Residence Premises

Policy Number

DON WADE AND FELICIA LINDSAY-WADE

GIC    04135 70 76  90A

2713 N 46TH ST
PHILADELPHIA, PHILADELPHIA, PA  19131-1502

Policy Period From:  10/01/16   To:  10/01/17
(12:01 A.M. standard time at location of the residence premises)

| SECTION I - COVERAGES AND AMOUNTS OF INSURANCE | |
|---|---|
| COVERAGE A – DWELLING PROTECTION | $313,000 |
| COVERAGE B – OTHER STRUCTURES PROTECTION | $31,300 |
| COVERAGE C – PERSONAL PROPERTY PROTECTION | $234,750 |
| COVERAGE D – LOSS OF USE PROTECTION (UP TO 12 MONTHS) | UNLIMITED |
| **SECTION II – COVERAGES AND LIMITS OF LIABILITY** | |
| Personal Liability – Each Occurrence | $500,000 |
| Medical Payments to Others | $5,000 |

DEDUCTIBLES (Applies to SECTION I Coverages ONLY)
We cover only that part of the loss over the deductible stated.
ALL PERILS          $1,000

| POLICY PREMIUM for Section I and Section II Coverages Above | $1,352.70 |
|---|---|

CREDITS AND DISCOUNTS (Included in policy premium above.)    $439.92 CR
Details on the following page. (If applicable)

OTHER COVERAGES AND ENDORSEMENTS
Forms and Endorsements are printed on the following page.

STATE SURCHARGES AND TAXES (Shown below if applicable)

TOTAL POLICY PREMIUM
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
$1,352.70

**PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.**

FIRST MORTGAGEE:
PENNYMAC LOAN SERVICES LLC          LOAN NR      8001753914
ITS SUCCESSORS AND/OR ASSIGNS, ATIMA
PO BOX 6618
SPRINGFIELD, OH 45501-6618

In witness whereof, this policy is signed on  09/30/16

Deneen Donnley, Secretary       Alan W. Krapf, President
REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.

HO-D1 (07-08)

Case ID: 190502023
87028-0703

USAA052319S990038603068

PAGE 4



**USAA GENERAL INDEMNITY COMPANY**
**HOMEOWNERS POLICY DECLARATIONS**

| | Policy Number | | Policy Term: | 10/01/16 | 10/01/17 |
|---|---|---|---|---|---|
| GIC | 0413570 76 | 90A | | Inception | Expiration |

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

|  |  |  |
|---|---|---|
| QR9GIC | (07-08) | QUICK REFERENCE-PREFERRED PROTECTION |
| HO-9R(O2) | (07-08) | PREFERRED PROTECTION PLAN |
| HO-ACPPA | (07-12) | AMENDMENT TO CONTRACT PROVISIONS |
| HO-PA | (07-08) | PENNSYLVANIA SPECIAL PROVISIONS |
| HOSLS9(O2) | (07-08) | SPECIAL LOSS SETTLEMENT |
| 291PA | (07-08) | PENNSYLVANIA NOTICE |
| HO-208PA | (07-12) | WATER BACKUP OR SUMP PUMP OVERFLOW |

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

| | |
|---|---|
| AUTO AND HOME COMBINATION DISCOUNT | $150.30 CR |
| HOME AGE DISCOUNT | $271.30 CR |
| PROTECTIVE DEVICE CREDIT | $18.32 CR |

USAA052319S990038604 Case 2:19-cv-02723-MSG   Document 1   Filed 06/21/19   Page 32 of 86



USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

# PREFERRED PROTECTION PLAN – HOMEOWNERS POLICY

### **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

**Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.**

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

**IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## QUICK REFERENCE

| | Page | | Page |
|---|---|---|---|
| **AGREEMENT** | 1 | Fungus, Or Wet or Dry Rot | |
| **DEFINITIONS** | 1 | Military Uniforms | |
| **DEDUCTIBLE** | 3 | War | |
| | | Electronic Media | |
| **SECTION I** | | **LOSSES WE COVER** | 14 |
| **PROPERTY WE COVER** | 3 | Dwelling and Other Structures | |
| Dwelling Protection | | Personal Property | |
| Other Structures Protection | | **LOSSES WE DO NOT COVER** | 15 |
| Personal Property Protection | | **LOSS SETTLEMENT** | 19 |
| Special Amounts | | **CONDITIONS** | 21 |
| Property We Do Not Cover | | | |
| Loss of Use Protection | | **SECTION II** | |
| **ADDITIONAL COVERAGES** | 7 | **LIABILITY COVERAGES** | 25 |
| Debris Removal | | Personal Liability | |
| Reasonable Repairs | | Medical Payments | |
| Trees, Shrubs, Plants | | **EXCLUSIONS** | 26 |
| Fire Department Charge | | **ADDITIONAL COVERAGES** | 30 |
| Property Removed | | Claims Expenses | |
| Credit Card and Identity Fraud | | First Aid Expenses | |
| Loss Assessment | | Damage to Property of Others | |
| Collapse | | Loss Assessment | |
| Lock Replacement | | **CONDITIONS** | 31 |
| Refrigerated Products | | | |
| Land | | **SECTIONS I and II** | |
| Glass or Safety Glazing | | **CONDITIONS** | 33 |
| Landlord's Furnishings | | | |
| Building Ordinance or Law | | | |
| Temporary Living Expense | | | |

This policy is issued by USAA General Indemnity Company ("USAA GIC"). This is a participating policy. You are entitled to dividends as may be declared by the USAA GIC Board of Directors.

QR9GIC (07–08)

87067–0708
Page 1 of 1

Case ID: 190502023

USAA052319S990038605

PAGE   6
GIC   04135 70 76         90A
Homeowners 9R(02)
Preferred Protection Plan
(07-08)
HO 2008 Program

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Collapse"** means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of **"collapse"**.

6. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

7. **"Fungus"** means any microorganism or by-product of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. **"Insured"** means:

   a. The **"member"**

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

      (1) Your relatives; or

HO-9R(02)  (07-08)

62382-0808
Page 1 of 34

USAA052319S9900386060044

(2) Other persons under the age of 21 and in care of any person named above.

Under SECTION II, "insured" also means:

d. With respect to animals, "watercraft" or "personal watercraft" to which this policy applies, any person or organization legally responsible for these animals, "watercraft" or "personal watercraft" which are owned by you or any person included in 9.a, 9.b or 9.c. above. A person or organization using or having custody of these animals, "watercraft" or "personal watercraft" in the course of any "business" or without consent of the owner is not an "insured".

e. With respect to any vehicle or conveyance to which this policy applies:

(1) "Residence employees" while engaged in your employ or that of any person included in 9.a, 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an "insured location" with your consent.

10. "Insured location" means:

a. The "residence premises";

b. Any premises used by you in connection with 10.a. above;

c. Any part of a premises:

(1) Not owned by any "insured"; and

(2) Where any "insured" is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any "insured";

e. Land owned by or rented to any "insured" on which a one or two family dwelling is being built as a residence for any "insured";

f. Individual or family cemetery plots or burial vaults of any "insured"; or

g. Any part of a premises occasionally rented to any "insured" for other than "business" use.

11. "Member" means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy.

12. "Motor vehicle(s)" means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. "Named peril(s)" means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

15. "Personal watercraft" means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Professional services" means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives,

HO-9R(02)  (07-08)

I.03GFHL.000147.0031.0006.0.000000.Z.

veterinarians, pharmacists, architects, landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18.  **" Property damage** means physical damage to, or destruction of tangible property, including loss of use of this property.

19.  **"Residence employee"** means an employee of any **" insured"** whose primary duties are related to the maintenance or use of the **"residence premises "** ,including household or domestic service.

20.  **"Residence premises"** means:

1.  The one family dwelling, other structures, and grounds; or

2.  That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two, family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21.  **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22.  **" War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23.  **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I –   PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1.  The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2.  Materials and supplies located on or next to the **"residence premises"** used to construct, alter, or repair the dwelling or other structures on the **"residence premises";** and

3.  Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1.  Other structures on the **"residence premises".**

a.  We cover other structures on the **"residence premises":**

(1)  Set apart from the dwelling by clear space; and

(2)  Sidewalks, driveways and fences; and

USAA052319S9900386008004

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I  ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the other structures are located;

(2) Structures used in whole or part for **"business"** unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any **"insured 's"** employment by another; and

(b) Performed solely by an **"insured".**

2. Other Structures away from the **"residence premises".**

a. We cover other structures owned by you and located away from the **"residence premises"**, if used by you in connection with the **"residence premises".**

b. We do not cover:

(1) Other structures located away from the **"residence premises":**

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for **"business";** or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C – Personal Property Protection**

We cover:

Tangible personal property owned or used by any **"insured"** while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

1. Others while the property is on the part of the **"residence premises"** occupied by any **"insured";**

2. A guest or a **"residence employee"**, while the property is in any residence occupied by any **"insured ".**

The amount of insurance for personal property usually located at any **"insured's"** residence, other than the **"residence premises"** is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

1. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

2. $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

HO-9R(02)  (07–08)

I.03GFHL.000147.0031.0007.0.000000.Z.

USAA052319S990038609

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

3. $1,500 for **"watercraft"** or **"personal watercraft "**including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence, or
   b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence; or

   b. Designed for assisting the handicapped.

   We also cover:

   a. Motorized golf carts and their equipment and accessories; and

   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or other tenants who qualify as **"insureds"**

HO-9R(02)  (07-08)

USAA052319S99003661000

PAGE  11
GIC    04135 70 76      90A

7. Personal property in an apartment regularly rented or held for rental to others by any **"insured"**, except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Property rented or held for rental to others off the **"residence premises"**.

9. **"Business"** data, records, recordings, images and photographs including such data stored in:

   a. Books of account, drawings or other paper records; or,

   b. Electronic storage media.

   However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

**COVERAGE D – Loss of Use Protection**

The amount of insurance for Loss of Use shown on the Declarations is the total limit for all the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be the for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2. **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the **"residence premises"** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premise is defined as a premises that is adjacent to the **"residence premises"**.

HO-9R(02)  (07–08)

Case ID: 190502023

I.03GFH.L.060147.0031.0008.0.000000.Z.

USAA052319S990038611Case

GIC   04135 70 76

PAGE  12
90A

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

Except as provided by ADDITIONAL COVERAGES Fungus, or Wet or Dry Rot, the coverage afforded under 1., 2. and 3. does not apply to loss caused by "fungus", or wet or dry rot.

No deductible applies to the coverage afforded under 1. 2. and 3. above.

## ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under Section I – LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the "residence premises" of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss covered under "named peril(s)".

   provided the tree(s)

      (3) Damage(s) a covered structure; or

      (4) Does not damage a covered structure; but

         (a) Blocks a driveway on the "residence premises" which prevents a "motor vehicle" that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

         (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

   This coverage reduces the amount of insurance that applies to the covered property.

   The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I – LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under Section I – LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in Section I – CONDITIONS 2.d.

HO-9R(02)  (07–08)

Page 7 of 34

Case ID: 190502023

The policy deductible applies.

### 3. Trees, Shrubs and Other Plants.

We cover trees, shrubs, plants, lawns or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

### 4. Fire Department Service Charge.

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under Section I   LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

### 5. Property Removed.
We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under Section I – LOSSES WE COVER and for no more than 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

### 6. Credit Card Coverage and Identity Fraud Expense Coverage.

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage**.

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

(1) The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

(2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

(3) Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured"**.

(4) Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

HO-9R(02)   (07–08)

Page 8 of 34

Case ID: 190502023

I.03GFHI_000147.0031.0009.0.000000.Z.

USAA052319S990038613

For losses covered by this additional insurance we will provide defense as follows:

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. **Under Identity Fraud Expense Coverage,** we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud".**

With respect to the provisions of this coverage only, the following definitions are added:

**"Identify Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **" insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchandise, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud"**;

(5) Reasonable attorney fees incurred, with our prior consent, for:

(a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

(b) The removal of any criminal or civil judgments wrongly entered against an **"insured".**

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud"**;

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud".**

This coverage is additional insurance and does not reduce the amount of insurance.

HO-9R(02)  (07-08)

Page 9 of 34

Case ID: 190502023

USAA052319S99003861400008

PAGE  15
GIC   04135 70 76     90A

A $100 deductible applies to
**Identity Fraud Expense Coverage.**

The following exclusions apply to
**Credit Card Coverage** and **Identity Fraud Expense Coverage:**

(1)  We do not cover forgery, theft or
use of a credit card, electronic fund
transfer card or access device:

    (a)  By a resident of your household
or any **"insured"**;

    (b)  By a person who has been
entrusted with the card(s) or
device(s);

    (c)  If any **"insured"** has not
complied with all terms and
conditions under which the cards
or devices are issued.

(2)  We do not cover loss arising out of
**"business"** pursuits, dishonesty,
fraud, or criminal activity of any
**"insured"**.

7.  **Loss Assessment.** We will pay up to
$10,000 for your share of loss assessment
charged against you by a corporation or
association of property owners for an
event that occurs during the policy period,
when the assessment is made as a result of
**"sudden and accidental"** direct physical
loss to the property, owned by all members
collectively, caused by a loss under Section
I – LOSSES WE COVER for **DWELLING
PROTECTION COVERAGE AND OTHER
STRUCTURES PROTECTION COVERAGE,**
subject to all provisions of the policy.

This coverage does not apply to
assessments made as a result of damage
caused by:

a.  Earthquake; or

b.  Land shock waves or tremors before,
during or after a volcanic eruption.

This coverage applies only to loss
assessments charged against you as owner
or tenant of the **"residence premises"**.

We do not cover loss assessments charged
against you or a corporation or association
of property owners by any government
body.

The limit of $10,000 is the most we will
pay with respect to any one loss,
regardless of the number of assessments.

This coverage is not limited by the
expiration of this policy.

This coverage is additional insurance and
does not reduce the amount of insurance.

No deductible applies to this coverage.

8.  **"Collapse"** For an entire building or any
part of a building covered by this insurance
we insure for direct physical loss to
covered property involving **"collapse"** of a
building or any part of a building only when
the **"collapse"** is caused by one or more
of the following:

a.  **"Named peril(s)"** apply to covered
buildings and personal property for loss
insured by this additional coverage.

b.  Decay that is hidden from view, meaning
damage that is unknown prior to
collapse or that does not result from a
failure to reasonably maintain the
property;

c.  Insect or vermin damage that is hidden
from view, meaning damage that is
unknown prior to **"collapse"** or that
does not result from a failure to
reasonably maintain the property;

d.  Weight of contents, equipment, animals
or people;

e.  Weight of rain which collects on a roof;
or

f.  Use of defective material or methods in
construction, remodeling or renovation
if the **"collapse"** occurs during the
course of the construction, remodeling
or renovation.

Case ID: 190502023

I.03GFHL.000147.0031.0010.0.000000.Z.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the "collapse" of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

   a. Change the combination in the lock hardware of the doors, or

   b. Change the lock hardware of the doors.

   The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products.** We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. This $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

    The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

    This coverage does not increase the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

    This coverage is additional insurance and does not reduce the amount of insurance.

    The policy deductible applies.

12. **Glass or Safety Glazing Material**

    We cover:

    a. The breakage of glass or safety glazing material caused by a loss under Section – I  LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

    b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

    This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An **"insured"** dwelling being constructed is not considered vacant.

    This coverage reduces the amount of insurance that applies to the damaged property.

    The policy deductible applies.

13. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"** , other than Theft.

HO-9R(02)  (07–08)

Case ID: 190502023

USAA052319S990038618004S

PAGE 17
GIC   04135 70 76   90A

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A – Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expense.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred. This coverage is additional insurance and does not reduce the Loss of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Fungus, Or Wet or Dry Rot.**

1. We will pay up to a total of $2,500 for:

a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot, from covered property;

b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, or wet or dry rot, and/or

c. The cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**

which is the direct result of a loss under Section I – LOSSES WE COVER.

2. We will pay up to $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot, which is the direct result of Section I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage once the policy deductible has been met.

17. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

HO-9R(02)  (07–08)

Page 12 of 34

Case ID: 190502023

USAA05231SS990038617

18. **War.** To the extent that coverage for **"war"** is provided here, item 1. f. under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION and the **"war"** exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a.  Direct loss or damage to your personal property caused by **"war"**; or:

b.  Abandonment as a consequence of **"war"**

subject to the following conditions:

This coverage applies only:

a.  To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b.  To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a.  Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b.  Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Suit Against Us** clause is changed for loss by **"war"** only:

No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

**"War"** loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

19. **Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"** , provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

USAA052319S9900386180043C

# SECTION I – LOSSES WE COVER

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER – Coverages A and B unless excluded in Section I – LOSSES WE DO NOT COVER.

## COVERAGE C - PERSONAL PROPERTY PROTECTION

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER – Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **"Aircraft,"** including self–propelled missiles and spacecraft.

6. **Vehicles,** meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke,** meaning **"sudden and accidental"** damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

   b. In or to a dwelling under construction, or materials and, supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**

   This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

   a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss.

   b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

   c. Trailers and campers.

HO-9R(02)  (07–08)

I.03GFHL.000147.0031.0012.0.000000.Z.

**10. Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet,** which causes damage to property contained in a building.

**12. Discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

This peril does not include loss:

a.  To the system or appliance from which the water or steam escaped; or

b.  Caused by or resulting from freezing except as provided in the peril of Freezing below; or

c.  On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

**13. Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

**14. Freezing of a plumbing,** heating, air conditioning or automatic fire protective system or of a household appliance.

This peril does not include loss on the **"residence premises"**, if you have failed to:

a.  Maintain heat in the building; or

b.  Shut off the water supply and drain the system and appliances of water.

**15. Damage from artificially generated electrical current.**

**16. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I – LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1.  Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

    (i)  The cause of the excluded event or damage that; or

    (ii)  Other causes of the loss that; or

    (iii)  Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv)  Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a.  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

        (1)  Maintained heat in the building; or

        (2)  Shut off the water supply and drained the system and appliances of water;

PAGE 21

GIC   04135 70 76   90A

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

   (2) Fence, pavement, patio; or

   (3) Foundation, retaining wall or bulkhead; or

   (4) Pier, wharf or dock.

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. Wear and tear, marring, deterioration;

g. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

h. Smog, rust, electrolysis or other corrosion;

i. Smoke from agricultural smudging or industrial operations;

j. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

k. Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

l. Birds, rodents, insects;

m. Animals owned or kept by any **"insured"**.

n. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

o. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an **"insured"**.

p. Pressure from, or presence or intrusion of tree, shrub or plant roots.

2. If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any items in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

I.03GFHL.000147.0031.0013.0.000000.Z.

USAA052319S99003862104

PAGE   22

GIC   04135 70 76     90A

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION:**

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. **Ordinance or Law**, meaning the increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

   b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

      (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

      (2) Landslide; mudslide or mudflow;

      (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

      (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

      unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of a building, storm door or storm window results and then we will pay only for the resulting loss.

   c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

      (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

      (2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

      (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

      (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

      unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

HO-9R(02)  (07–08)

Page 17 of 34

Case ID: 190502023

d.  **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e.  **Neglect**, by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f.  **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g.  **Nuclear Hazard**, meaning

(1)  Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2)  Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I – LOSSES WE COVER.

(3)  This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h.  **Intentional Loss**, meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i.  **"Fungus"**, or Wet or Dry Rot, or Bacteria other than as provided in ADDITIONAL COVERAGES, **"Fungus"**, or Wet or Dry Rot.

j.  **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

k.  **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

2.  We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

a.  **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

b.  **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

c.  **Faulty, negligent, inadequate or defective**:

(1)  Planning, zoning, development, surveying, siting;

(2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises"**.

HO-9R(02)  (07–08)

Page 18 of 34

Case ID: 190502023

# SECTION I – LOSS SETTLEMENT

We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage.  Subject to the amount of insurance covered losses are settled as follows:

1.  For the following property:

    a.  Structures that are not buildings; and

    b.  All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

    We will pay the lesser of:

    a.  The **"actual cash value"**; or

    b.  Our cost to replace the property with property of like kind, quality, age and condition; or

    c.  Our cost to repair or our cost to restore the property to the condition it was in just before the loss

2.  All items under Property We Cover – Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

    a.  When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

    b.  When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to

    exceed our cost to repair or our cost to replace the damaged part of the property.

    (1)  To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

    (2)  When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

3.  Home Protector Coverage.

    You agree:

    a.  To insure your buildings under Property We Cover – Dwelling Protection and Other Structures Protection, on the **"residence premises"**, for the full replacement cost at the time this policy is issued; and

    b.  To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision if it is deemed necessary by us. You must pay for any added premium; and

    c.  To tell us within 90 days of the start of any additions or other physical changes to buildings on the **"residence premises"** which increases the value by the greater of:

    (1)  $25,000; or

    (2)  5% of the current Dwelling Protection amount of insurance.

    You must pay any resulting premium.

USAA052319S990038624

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

a.  Applying to buildings covered under Property We Cover − Dwelling Protection or Other Structures Protection; or

b.  Provided under ADDITIONAL COVERAGES, Debris Removal; or

c.  Provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for a., b., or c., either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

4.  Loss Settlement − Personal Property. We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a.  Similar to the insured article, and

b.  Of like quality and usefulness.

PROPERTY COVERED

a.  Personal property covered in Property We Cover − Personal Property Protection, except personal property stated in Property Not Eligible below;

b.  If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a.  Items of rarity or antiquity that cannot be replaced;

b.  Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors items;

c.  Motorized golf carts and their equipment and accessories;

d.  Articles not maintained in good or workable condition;

e.  Property that is either obsolete or useless to the **"insured"** at the time of loss;

f.  Property that you do not intend to repair, replace, or restore.

LOSS SETTLEMENT

a.  For property that is eligible for replacement cost coverage it is our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation; or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss; or

(3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b.  We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $2,500

HO-9R(02)  (07−08)

L03GFHL.000147.0031.0015.0.000000.Z.

c. You make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

d. For property that is not eligible for replacement cost coverage, it is our option to:

   (1) Pay you the **"actual cash value"**; or

   (2) Replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

   (3) Pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in this policy.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

  a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

  b. For more than the applicable amount of insurance

whichever is less.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

  a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

  b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

  c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage, and Identity Fraud Expense Coverage;

  d. (1) Protect the property from further damage;

    (2) Make reasonable and necessary repairs to protect the property; and

    (3) Keep an accurate record of repair expenses;

  e. Cooperate with us in the investigation of a claim;

  f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

  g. As often as we reasonably require:

    (1) Show the damaged property;

    (2) Provide us with records and documents we request and permit us to make copies; and

    (3) Submit to and sign, while not in the presence of any other **"insured"**:

      (a) Statements; and

      (b) Examinations under oath; and

HO-9R(02) (07-08)

(4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so;

h. Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the **"insured"** and all others in the property involved and all liens on the property.

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimate;

(6) The inventory of claimed personal property described in 2.f. above;

(7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

(8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

**3.   Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**4.   Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between **"actual cash value"** of the property before and after the loss.

**5.   Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

**6.   Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

L03GFHL000147.0031.0016.0.000000.Z.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage; is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amount to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us.** No action can be brought against us unless you have:

   a. Given us notice of the loss,

   b. Complied with all other policy provisions, and

   c. Started the action

   within two years after the date of the loss

9. **Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment.** You may not abandon property to us for any reason.

12. **Mortgagee Clause.** The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any covered loss under Section I – LOSSES WE COVER for Dwelling Protection or Other Structures Protection will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

USAA052319S990038628

PAGE 29
GIC   04135 70 76    90A

a. Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; and

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the mortgagee and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates.

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d. Submits to examination under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Salvage and Recovered Property.**

a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

**15. Concealment, Misrepresentation or Fraud.** If you or any other "insured", whether before or after an "occurrence" or loss under this policy has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which, if known by us, would have caused us not to:

(1) Issue the policy;

(2) Issue the policy in as large an amount;

(3) Provide coverage for the hazard resulting in the loss; or

(4) Issue the policy for the same amount of premium or at the same rate

HO-9R(02) (07-08)

Case ID: 190502023

I.03GFHL.000147.0031.0017.0.000000.Z.

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all **"insureds"** and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

16. **Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

17. **Adjustment to Building Cost.** The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property Protection and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

## SECTION II – LIABILITY COVERAGES

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability. This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

### COVERAGE F – Medical Payments to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"** if the **"bodily injury"**:

USAA052319S99003863000042

PAGE  31

G I C   04135 70 76      90A

a.  Arises out of a condition on the "insured location" or the ways immediately adjoining;

b.  Is caused by the activities of any "insured";

c.  Is caused by a "residence employee" in the course of the "residence employee's" employment by any "insured"; or

d.  Is caused by an animal owned by or in the care of any "insured".

## SECTION II – EXCLUSIONS

1.  **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

a.  Which is reasonably expected or intended by any "insured" even if the resulting **"bodily injury"** or **"property damage"**:

  (1)  Is of a different kind, quality or degree than initially expected or intended; or

  (2)  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

  However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

b.  (1)  Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

  (2)  Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

    (a)  On an occasional basis if used only as a residence;

    (b)  In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    (c)  In part, as an office, school, studio or private garage;

c.  Arising out of the rendering or failure to render **"professional services"**;

d.  Arising out of a premises:

  (1)  Owned by any **"insured"**; or

  (2)  rented to any **"insured"**; or

  (3)  rented to others by any **"insured"**;

  that is not an **"insured location"**;

e.  Arising out of:

  (1)  The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**;

  (2)  The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

  (3)  Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

HO-9R(02)  (07–08)

Case ID: 190502023

I.03GFHL.000147.0031.0018.0.000000.Z.

USAA052319S99003863

GIC   04135 70 76   PAGE 32
90A

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a "motor vehicle";

(2) A "motor vehicle" designed for recreational use off public roads, not subject to motor vehicle registration and;

    (a) Not owned by any "insured"; or

    (b) Owned by any "insured" provided the "occurrence" takes place on any "insured location"; or

    (c) Owned by any "insured" and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    (a) A golfing facility and is parked or stored there, or being used by any "insured" to:

        (i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

        (ii) Travel to and from an area where "motor vehicles" or golf carts are parked or stored; or

        (iii) Cross public roads at designated points to access other parts of the golfing facility.

    (b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

(4) A "motor vehicle" not subject to motor vehicle registration which is:

    (a) Used to service any "insured's" residence; or

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location".

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any "insured" to any person of; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a "watercraft" or "personal watercraft".

This exclusion does not apply to any "watercraft" owned or borrowed by, or rented to any "insured":

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any "personal watercraft" or "watercraft" that is being stored.

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any "insured" to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an "aircraft" or "hovercraft".

HO-9R(02)  (07-08)

Page 27 of 34

Case ID: 190502023

h. Caused directly or indirectly by "war" including any consequence of "war". Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any "insured".

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of "pollutants" however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

l. Arising out of exposure to lead paint or other lead-based products.

m. Arising out of exposure to asbestos.

n. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

o. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "fungus", or wet or dry rot, or bacteria.

p. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

q. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

r. Arising out of any actual, alleged or threatened physical or mental abuse.

Exclusions d., e., f., and g. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by any "insured".

2. Coverage E - Personal Liability does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any "insured location"; or

(b) Where the liability of others is assumed by any "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy.

I.03GFHL.000147.0031.0019.0.000000.Z.

b.  "Property damage" to property owned by the "insured".

c.  "Property damage" to property rented to, occupied or used by or in the care of any "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion.

d.  "Bodily injury" to any person eligible to receive any benefits:

(1)  Voluntarily provided; or

(2)  Required to be provided, whether or not actually provided;

by any "insured" under any:

(1)  Workers' compensation law;

(2)  Non-occupational disability law; or

(3)  Occupational disease law.

e.  "Bodily injury" or "property damage" for which any "insured" under this policy:

(1)  Is also an "insured" under a nuclear energy liability policy; or

(2)  Would be an "insured" under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1)  Nuclear Energy Liability Insurance Association;

(2)  Mutual Atomic Energy Liability Underwriters;

(3)  Nuclear Insurance Association of Canada; or any of their successors.

f.  "Bodily injury" to you or any "insured" within the meaning of part a., b. or c. of "insured" as defined.

g.  Punitive or exemplary damages, fines, or penalties.

3.  Coverage F – Medical Payments to Others does not apply to "bodily injury":

a.  To a "residence employee" if the "bodily injury":

(1)  Occurs off the "insured location"; and

(2)  Does not arise out of or in the course of the "residence employee's" employment by an "insured".

b.  To any person eligible to receive benefits:

(1)  Voluntarily provided; or

(2)  Required to be provided;

under any:

(1)  Workers' compensation law; or

(2)  Non-occupational disability law; or

(3)  Occupational disease law.

c.  From any:

(1)  Nuclear reaction; or

(2)  Nuclear radiation; or

(3)  Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4)  Any consequence of any of these.

d.  To any person, other than a "residence employee" of any "insured", regularly residing on any part of the "insured location" or residing on any part of the "insured location" for a period in excess of thirty consecutive days prior to the date of loss, if other permanent residency is established or claimed elsewhere.

HO-9R(02)  (07–08)

# SECTION II – ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability.

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

We will not pay for **"property damage"**:

   a. To the extent of any amount recoverable under SECTION I of this policy;

   b. Caused intentionally by any **"insured"** who is 13 years of age or older;

   c. To property owned by any **"insured"**;

   d. To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

   e. Arising out of:

      (1) A **"business"** engaged in by any **"insured"**;

      (2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

         (a) Is designed for recreational use off public roads,

         (b) Is not owned by any **"insured"**; and

         (c) At the time and place of the **"occurrence"**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you, by a corporation or association of property owners, when the assessment is made as a result of:

HO-9R(02)  (07–08)

I:03GFHL.000147.0031.0020.0.000000.Z.

USAA052319S9900386350048

PAGE  36
GIC    04135 70 76        90A

a. **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as an owner or tenant of the **"residence premises"**.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E   Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which if known by us, would have caused us not to:

   (1) Issue the policy;

   (2) Issue the policy in as large an amount;

   (3) Provide coverage for the hazard resulting in the loss; or

   (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

HO-9R(02)  (07–08)

Case ID: 190502023

USAA052319S9900386360

GIC   04135 70 76

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss.** In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses.

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person – Coverage F – Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Case ID: 190502023

I.03GFHL.000147.0031.0021.0.000000.Z.

USAA052319S990038637C0056

# SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you by postal mail at your mailing address shown in the Declaration or provided to you electronically if we have your consent and agreement on file to receive documents electronically

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

   (b) If the risk has changed substantially since the policy was issued; or

   (c) Upon discovery that the **"insured"** does not meet USAA Group membership eligibility requirements; or

   (d) Any other reason allowed by law.

   Cancellation can be done by notifying you at least 30 days before the date cancellation takes effect.

HO-9R(02)  (07–08)

Page 33 of 34

Case ID: 190502023

USAA052319S990038638C 486

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**5. Nonrenewal.** We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

**6. Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

**7. Spouse Access.** The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

**8. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**9. Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition, **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-9R(02) (07–08)

Case ID: 190502023

I.03GFHL.000147.0031.0022.0.000000.Z.

USAA052319S990038639Claims

GIC    04135 70 76    PAGE   40
                      90A

HO-ACPPA (07-12)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment To Contract Provisions
Pennsylvania
(Applies to HO-3R, HO-6R & HO-9R unless otherwise noted)

### DEFINITIONS

**5.** "**Collapse**" is deleted and replaced by the following:

**5.** "**Collapse**" means:

   a.  A sudden falling or caving in; or

   b.  A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

### SECTION I

### SECTION I – PROPERTY WE COVER

**COVERAGE C – Personal Property Protection**

**Under Property We Do Not Cover:**

Item **1.** is deleted.

Item **3.** is deleted and replaced by the following:

**3.** "**Motor vehicle(s)**". This includes but is not limited to the following while in or upon a "**motor vehicle**".

   a.  Equipment, accessories, and parts; or

   b.  Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a "**motor vehicle**". We do not cover antennas, tapes, wire, discs or other media, for use with any such device or instrument.

We do cover "**motor vehicle(s)**" or all other motorized land conveyances not subject to motor vehicle registration which are:

   a.  Used solely to service any residence; or

   b.  Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

   a.  Motorized golf carts and their equipment and accessories; and

   b.  Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads.

The following is added to **Property We Do Not Cover:**

Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

**Under COVERAGE D – Loss of Use Protection:**

The lead-in paragraph is deleted and replaced by the following:

The SECTION I – LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages that follow.

Item **3. Prohibited Use** is deleted and replaced by the following:

HO-ACPPA (07-12)

126093-0212
Page 1 of 4

Case ID: 190502023

3. **Prohibited Use.** If a loss covered under SECTION I — LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I — LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.

**ADDITIONAL COVERAGES**

The lead—in paragraph is deleted and replaced by the following:

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I — LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

Under **6. Credit Card Coverage and Identity Fraud Expense Coverage,** item b., **"Expenses"** (3) is deleted and replaced by the following:

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

HO—3R and HO—9R only:

Under **12. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO—6R only:

Under **11. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the building containing the **"residence premises"** has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO—3R only:

Under **18. War,** item b. is deleted and replaced by the following:

b. Abandonment as a consequence of **"war"**;

**SECTION I - LOSSES WE COVER**

**COVERAGE C - PERSONAL PROPERTY PROTECTION**

Under **9. Theft,** item a. is deleted and replaced by the following:

a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if other permanent residency is established or claimed elsewhere.

Under **14. Freezing** is deleted and replaced by the following:

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied, if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

**SECTION I - LOSSES WE DO NOT COVER**

HO—3R and HO—9R only:

HO—ACPPA (07—12)

Page 2 of 4

Case ID: 190502023

USAA052319S99003864190445

PAGE   42
GIC    04135 70 76        90A

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION

Item 1.a. is deleted and replaced by the following:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliance of water.

## SECTION I - CONDITIONS

Item 7. Other Insurance is deleted and replaced by the following:

7. Other Insurance. Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy is also covered by other insurance, we will pay as follows:

a. Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance; or

b. For a loss to personal property that is separately described and specifically insured by other insurance, whether or not that policy is primary or excess, we will be excess over that insurance for a loss that is also covered under this policy; or

c. For all other coverage we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss; or

d. This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

The following condition is added:

**Reducing The Risk Of Loss**

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, in item e.:

This exclusion does not apply to the permissive use, loading or unloading of:

is deleted and replaced by the following:

This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

## SECTION I and II - CONDITIONS

6. **Subrogation** is changed in the HO-3R only:

Under item 6. **Subrogation**, the first paragraph is deleted and replaced by the following:

HO-ACPPA (07-12)

Page 3 of 4

USAA052319S9900386420448

6. **Subrogation.** Any "insured" may waive in
   writing before a loss all rights of recovery
   against any person. If not waived, we may
   require an assignment of rights of recovery
   for a loss to the extent that payment is
   made by us.

Item **8. Assignment** is deleted and replaced by
the following:

8. **Assignment.** Assignment of any claim or
   this policy will not be valid unless we give
   our written consent.

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-ACPPA (07-12)                                      Page 4 of 4

Case ID: 190502023

L03GFHL000147.0031.0024.0.000000.Z.

USAA052319S9900386430485

PAGE   44

GIC   04135 70 76          90A

HO-PA (07-08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PENNSYLVANIA SPECIAL PROVISIONS

**DEFINITIONS**

16. **"Pollutants"** is deleted and replaced by the following:

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, petroleum products, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**ADDITIONAL COVERAGES**

Under **1. Debris Removal**, item b. is deleted and replaced by the following:

b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

(1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

(2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**

provided:

(3) The tree(s) damage a covered structure; or

(4) Windstorm or hail or weight of ice, snow or sleet causes damage to a structure covered under this policy and the Pennsylvania Governor declares the area in which the **"residence premises"** is located to be a disaster areas as a result of such weather conditions; or

(5) The tree(s) do not damage a covered structure, but:

(a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

(b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage reduces the amount of insurance that applies to the covered property.

The policy deductible applies.

**SECTION 1 - LOSSES WE DO NOT COVER**

In the HO-3R and HO-9R under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and in the HO-6R under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION**

**1.h. Intentional Loss** is deleted and replaced by the following:

**1.h. Intentional Loss.**

(1) Intentional loss, meaning any loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

(2) However, this exclusion will not apply to deny payment to the **"insured"** who did not cooperate in or contribute to the creation of the loss if the loss:

(a) Is otherwise covered property under Coverage A, B or C of the policy; and

(b) Arises out of abuse to that innocent **"insured"** by another **"insured"**.

88678-0708
Page 1 of 4

HO-PA (07-08)

Case ID: 190502023

GIC   04135 70 76       PAGE   45
                                  90A

With respect to this provision, abuse means:

    (i) Abuse as defined in the Pennsylvania Protection From Abuse Act; or

    (ii) Attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If we pay a claim under this provision 1.h.(2)., our payment to the **"insured"** is limited to that **"insured's"** insurable interest in the property. In no event will we pay more than the Amount of Insurance.

The following applies to the HO–9R only:

## SECTION I – LOSS SETTLEMENT

Under **4. Loss Settlement – Personal Property**, the following is added to item b. under the LOSS SETTLEMENT section:

If the **"actual cash value"** amount is insufficient to initiate repair or replacement of the lost or damaged property, we will advance to you the amount necessary for you to initiate repair or replacement and such further amounts necessary to continue the repair or replacement. The amount of loss payment we agree upon for the lost or damaged property will be reduced by any advance payment. The total of all advances and other payments hereunder will not exceed the amount allowed under a.

Under this loss settlement procedure, the following special provisions apply:

(1) You shall promptly forward to us evidence of the agreement with the party repairing or replacing the property which shows the cost and estimated completion date of the repaired property or delivery date of the replaced property.

(2) We will send to you the balance, if any, of the loss payment previously agreed upon when you notify us of the completion of the repairs or the

expected delivery date of the replaced property.

(3) If you do not comply with the above terms at any time, we will pay no more than the **"actual cash value"** for the loss or damage. In such case, if the amount we advanced to you is more than the **"actual cash value"**, you shall refund the difference to us within 30 days of the date we mail our refund notice to you.

## SECTION I – CONDITIONS

9. **Our Option**, is deleted and replaced by the following:

9. **Our Option.** If we give you written notice within 15 working days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

## SECTION II – LIABILITY COVERAGES

**Coverage F – Medical Payments to Others**

Medical expenses do not include expenses for funeral services.

## SECTION II – ADDITIONAL COVERAGES

Under **1. Claims Expenses**, Item **e.** is deleted and replaced by the following:

e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. Any prejudgment interest awarded against an **"insured"** is subject to the applicable Pennsylvania Rules of Civil Procedures.

## SECTIONS I AND II – CONDITIONS

4. **Cancellation.** Paragraph b. is deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by notifying the **"insured"** named in the Declarations in writing of the date cancellation takes effect. This cancellation notice may be delivered to, or mailed to the **"insured"** named in the Declarations at the mailing address shown in the policy or at a forwarding address.

HO-PA (07–08)                                          Page 2 of 4

Case ID: 190502023

PAGE  46

GIC   04135 70 76     90A

Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the "insured" named in the Declarations at least 30 days before the cancellation takes effect.

(2) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons by notifying the "insured" named in the Declarations at least 30 days prior to the proposed cancellation date:

(a) This policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us;

(b) There has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

(c) There is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the "insured";

(d) The "insured" has failed to pay the premium by the due date, whether payable to us or to our agent or under any finance or credit plan; or

(e) For any other reason approved by the Pennsylvania Insurance Commissioner.

This provision shall not apply if the named "insured" has demonstrated by some overt action to us or to our agent that the "insured" wishes the policy to be cancelled.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

5.  **Nonrenewal** is deleted and replaced by the following:

5.  **Nonrenewal.** We will not fail to renew this policy except for one of the reasons referred to in 4. Cancellation above. We may refuse to renew for one of the listed reasons by mailing to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy.

This provision does not apply if:

a.  We have indicated our willingness to renew and the "insured" has failed to pay the premium by the due date; or

b.  The named "insured" has indicated to us or our agent that the "insured" does not wish the policy to be renewed.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

9.  **Death.** Paragraph b. is deleted and the following added:

b.  Insurance under this policy will continue as provided in (1) or (2) below, whichever is later:

(1) For 180 days after your death regardless of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date; or

(2) Until the end of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date.

HO-PA (07–08)

Page 3 of 4

Case ID: 190502023

Coverage during the period of time
after your death is subject to all the
provisions of this policy including
payment of any premium due for the
policy period shown in the Declarations
and any extension of that period;

c. **"Insured"** includes:

(1) Any member of your household who
is an **"insured"** at the time of your
death, but only while a resident of
the **"residence premises";** and

(2) With respect to your property, the
person having proper temporary
custody of the property until
appointment and qualification of a
legal representative.

Except as specifically modified in this
endorsement, all provisions of the policy to
which this endorsement is attached also apply
to this endorsement.

Copyright, USAA, 2008.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-PA (07-08)                                            Page 4 of 4

GIC   04135 70 76

PAGE 48
90A

HO-SLS9(02)
(07—08)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**
**SPECIAL LOSS SETTLEMENT**
**(HO-9R only)**

**Coverage D – Loss of Use Protection , 1. Additional Living Expense is deleted and replaced by the following:**

1. **Additional Living Expense.** If a loss covered under Section I — LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I — LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

**TOTAL LOSS - LOSS SETTLEMENT**

**Coverage A – Dwelling Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, for Coverage A – Dwelling Protection only, SECTION I — LOSS SETTLEMENT, item **2.** is deleted and replaced by the following:

2. Under Coverage A – Dwelling Protection: We will pay you the total amount of insurance for **Coverage A – Dwelling Protection** shown in the Declarations.

   To receive any additional Coverage A – Dwelling Protection payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

   When repair or replacement is actually completed, we will pay the lesser of:

   a. The covered additional amount you actually and necessarily spend; or the amount it would cost us to repair or replace the dwelling,

   b. In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Coverage C – Personal Property Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, and your personal property is destroyed to the extent the property cannot be repaired to its condition prior to the loss we will pay your claim under the following terms:

Items a., b. and c. of the LOSS SETTLEMENT provision under **4. Loss Settlement – Personal Property** of the SECTION I — LOSS SETTLEMENT section of the policy is deleted and replaced by the following:

HO-SLS9(02)   (07—08)

62375-0808
Page 1 of 2

Case ID: 190502023

USAA052319S990038648

PAGE 49
GIC   04135 70 76   90A

We will pay 75% of the amount of insurance for Coverage C – Personal Property Protection as shown in the Declarations, if this is your primary residence and all of your personal property is located in your dwelling located on the **"residence premises"** at the time of loss.

However, if part of your personal property covered by this endorsement is at another location, or in an undamaged structure on the **"residence premises"** at the time of the loss, payment will be 75% of the Coverage C – Personal Property Protection limit less the covered replacement cost of the personal property not destroyed.

To receive additional payment which exceeds 75% of Coverage C – Personal Property Protection limit, the provisions and terms of the LOSS SETTLEMENT provision under 4. Loss Settlement – Personal Property will apply. However, item b. of the LOSS SETTLEMENT provision is deleted and replaced by:

b.   We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Liberalization Clause.**

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Unless specifically modified by this endorsement all other provisions of the policy to which this endorsement is attached shall apply.

Copyright, USAA 2008, All rights reserved.

HO-SLS9(02)  (07–08)

Page 2 of 2

Case ID: 190502023

I.03GFHL.000147.0031.0027.0.000000.Z.

USAA052319S990038649004

PAGE  50

GIC    04135 70 76     90A

291PA (07-08)

### PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

88684-0708
Page 1 of 1

Case ID: 190502023

USAA052319S9900386500000468

GIC   04135 70 76   PAGE  51
90A

HO-208PA (07-12)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WATER BACKUP OR SUMP PUMP OVERFLOW

Pennsylvania

### SECTION I

This endorsement applies to **PROPERTY WE COVER - Dwelling Protection, Other Structures Protection, Personal Property Protection and Loss of Use Protection.**

The following additional coverage is added:

We insure for direct, physical loss caused by:

1.  Water or water–borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the **"residence premises"**; or

2.  Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss caused directly or indirectly by the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:

A general condition of flooding meaning a temporary condition of complete inundation of:

a.  two or more acres of normally dry land area; or

b.  two or more properties

that includes the inundation of the part of the **"residence premises"** where the **"insured's"** dwelling is located. This applies even if there is a mechanical breakdown or a disruption of power.

### AMOUNT OF INSURANCE

$10,000 is the most we will pay for any one loss whether resulting from a single condition or series of related conditions.

### SECTION I - LOSSES WE DO NOT COVER

For loss covered by this endorsement, if your policy is the:

HO-3R or HO-9R only:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item **1.g.** is deleted and replaced by the following:

g.  latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO-6R:

If your policy includes the **Unit-Owners Coverage A – Special Dwelling Protection** endorsement, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, item **1.g.** is deleted and replaced by the following:

g.  latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

If the policy includes the **Special Personal Property Coverage** endorsement, under LOSSES WE DO NOT COVER, item **r.** is deleted and replaced by the following:

r.  latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO-208PA (07-12)

88679-0212__03
Page 1 of 2

Case ID: 190502023

L03GFHL.000147.0031.0028.0.000000.Z.

GIC    04135 70 76

Except to the extent of additional coverage provided by the terms of this endorsement, **Water Damage** is excluded as provided in HO-3R & HO-9R:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage.**

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d.  **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except to the extent of additional coverage provided by the terms of this endorsement, **Water Damage** is excluded as provided in HO-6R:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage.**

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d.  **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium     NO CHARGE**

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-208PA (07-12)

Case ID: 190502023

GIC   04135 70 76      PAGE   53
                        90A

# FRAUD WARNING

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

PAFRDP(01) 3-07

66602-0307
Page 1 of 1

USAA052319SS9900386530045

GIC    04135 70 76      90A

## Your Home Characteristics

Our mission at USAA is to help protect your financial security. One way we do this is by helping you determine if you're adequately covered in the event of a loss. We can calculate the minimum rebuilding cost of your home based on your home characteristics, but only you can decide if this is enough coverage. Our estimates are based on average construction costs and labor costs for geographic areas and may not reflect the unique features of your home or the area you live in.

On the back of this page, you'll find your home characteristics. If any of the information is incorrect, the rebuilding cost may be affected, so please revise any inaccuracies by:

- Logging on to usaa.com, selecting your policy and then Home Characteristics, or
- Calling us at 210-531-USAA (8722), our mobile shortcut #8722 or 800-531-8722.

**Should I adjust the coverage on my flood or wind policy?**
- If you have a separate flood or wind policy for this property, please call your agent or insurer to confirm that your coverage is adequate. For flood or wind policies serviced by the USAA Insurance Agency, please call us at the numbers listed above. Wind coverage is available in Alabama, Florida, North Carolina, South Carolina, Texas and Mississippi.

60321(04) Rev. 10-15

60321-1015
Page 1 of 2

Case ID: 190502023

### Your Home Characteristics

YEAR BUILT: 1925
*TOTAL SQUARE FOOTAGE: 1354
NUMBER OF STORIES: 2.0

*Total Square Footage:
Includes: Additions and Finished Attic Space
Excludes: Basements and Built-in or Attached Garages

GENERAL SHAPE AND STYLE: STANDARD
EXTERIOR FINISHES & FEATURES: STANDARD
INTERIOR FINISHES & FEATURES: STANDARD
KITCHENS AND BATHS: STANDARD
EXTERIOR WALL CONSTRUCTION: BRICK VENEER (50%),
STUCCO OVER FRAME (50%)
FOUNDATION TYPE: BASEMENT (100%)
ROOF TYPE: SLATE
YEAR ROOF INSTALLED/REPLACED: 2016
GARAGE OR CARPORT TYPE/STYLE: BASEMENT - 1 CAR
FLOOR COVERING MATERIALS: HARDWOOD - PLANK (80%), CARPET (10%),
TILE - CERAMIC (10%)
NUMBER OF BATHROOMS: FULL 2
FIREPLACES: NONE

**60321(04)** Rev. 10-15

Page 2 of 2

Case ID: 190502023

# EXHIBIT
# 2

# USPS Tracking®

**FAQs** > (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 70190160000057956273

Remove ✕

**Expected Delivery on**

## THURSDAY
## 23 MAY 2019 ⓘ

by
**8:00pm** ⓘ

## ⊘ Delivered

May 23, 2019 at 7:54 am
Delivered
SAN ANTONIO, TX 78265

**Get Updates** ⌄

---

| Text & Email Updates | ⌄ |
|---|---|

| Tracking History | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

**See Less** ⌃

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Feedback

## The easiest tracking number is the one you don't have to know.

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up (https://reg.usps.com**

**/entreg**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes

and mailpieces that are processed through USPS automated equipment.

Feedback